UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TIMOTHY FRANKS,** : | **Civil Action No. 02-2652** |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | |
| : | |
| **COUNTY OF LEHIGH,** : | |
| **THOMAS LAZORIK,** : | |
| **BRIAN KAHLER, TED KEHM,** : | |
| **JANICE NISBET, JANE BAKER AND** : | |
| **RICHARD O. KLOTZ,** : | |
| : | |
| **Defendants.** : | |

**DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants hereby reply to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment. In his Memorandum, Plaintiff asserts several claims that miscast the evidence presented in this case. For the sake of brevity, Defendants incorporate their Motion for Summary Judgment and brief in support of same, filed with the Court on November 7, 2003.

    **A.**     **Plaintiff's Presentation Of Testimony By Defendant Thomas Lazorik And Witness George Samuelson Is Incomplete And Therefore Misleading.**

        **1.**     **Defendant Thomas Lazorik**

Plaintiff writes that Defendant Thomas Lazorik ("Lazorik") testified that all sub-categories in employee evaluations should be weighted equally. (Pl. Br.[1] at 15). Plaintiff relies

---

[1] "Pl. Br." refers to pages from Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, the original of which was filed with the Court on January 26, 2004.

-2-

upon this testimony to support his argument that a less than equal balancing of every sub-category can only mean that the evaluations are evidence of discrimination. (Id. at 15-16).

To the contrary, Lazorik qualified his testimony. When asked specifically about different sub-categories receiving different rankings and the weight given to the rankings for purposes of the overall evaluation score, Lazorik testified that there is a "weighing" of the different sub-categories. (N.T. Lazorik[2] at 40). He further testified that the "unsatisfactory" ratings that Plaintiff received in certain sub-categories "had a lot of bearing on his total evaluation." (Id. at 41).

### 2. Witness George Samuelson

Plaintiff also argues that because co-worker George Samuelson ("Samuelson") thought that Plaintiff's work was satisfactory, it must be concluded that all three of Plaintiff's supervisors were incorrect and biased in their evaluations of Plaintiff's work. (Pl. Br. at 39-40). To the contrary, Samuelson was not in a position to evaluate Plaintiff's work as a supervisor. Indeed, it is undisputed in this matter that Samuelson never was Plaintiff's supervisor. (N.T. Samuelson[3] at 12).

Furthermore, and contrary to Plaintiff's argument, Samuelson testified that in fact, he was privy to "a lot of communications between" Kahler and Plaintiff regarding Plaintiff's need to "fix" his work. (Id. at 32).

Moreover, Plaintiff quotes Samuelson's testimony out of context. Specifically, Plaintiff quotes Samuelson as testifying that he did not "remember seeing anything in the emails [between

---

[2] "N.T. Lazorik" refers to pages from the transcript of Defendant Thomas Lazorik's deposition, taken on March 27, 2003, and attached to Defendant's Brief as Exhibit "C." The new pages cited herein are appended hereto as Exhibit "C."

[3] "N.T. Samuelson" refers to pages from the transcript of George Samuelson's deposition, taken on November 18, 2002, a copy of which is attached hereto as Exhibit "N."

Plaintiff and his supervisors] that I thought was major enough that couldn't be fixed, that if it wasn't fixed it would result in Tim's firing." (Pl. Br. at 40). When presented in context, Samuelson's testimony reveals that Samuelson did not have enough information to draw conclusions as to the quality of Plaintiff's work.

> Q. I'm asking you when you saw those e-mails that came from [Defendants Kahler, Lazorik, or Kehm] with regard to the spreadsheets, was there anything in those e-mails that you recall that made you stop and pause and say we have an incompetent person in our department?
>
> A. I didn't – I didn't think like that. I thought [Plaintiff's] work – I don't know why he was fired. So I didn't see anything in [Plaintiff's] work.
>
> Q. I'm telling you one of the reasons he was fired is because they claim he wasn't neat with regard to his work papers and they weren't legible . . . The other reason they give is he didn't properly design these Excel spreadsheets. And he didn't provide proper documentation in terms of the progression of events in terms of these grants . . .
>
> I'm asking you, do you recall anything in any e-mails that you read that were either generated by [Kahler, Lazorik, or Kehm] with regard to those issues that in your mind would have warranted termination?
>
> A. I don't remember seeing anything in the e-mails that I thought was major enough that couldn't be fixed, that if it wasn't fixed, it would result in [Plaintiff's] firing. However, I don't know how many – those e-mails came on numerous occasions. I can't say [Plaintiff] addressed everything that was asked of him, or if he did, he ran it back through me so I could concur.
>
> Q. I understand that. You may have been out of the loop on some of these things, but when you were in the loop you stand by your answer?
>
> A. Correct, I do.

(N.T. Samuelson at 33-35).

Furthermore, when specifically asked about his measure of "quality of work" on employee evaluations, Samuelson testified that he did not know the criteria for evaluation of the various sub-categories of performance and that he could only "guess." (Id. at 59-60).

-3-

-4-

Regardless of the above, based on his status as a co-worker, rather than supervisor, Samuelson's evaluation of Plaintiff's work product is insufficient by itself to create an issue of fact for purposes of summary judgment.  See King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003), cert. denied, 124 S. Ct. 922 (2003). (rejecting the fact testimony of the plaintiff's co-workers as to the quality of the plaintiff's work: "Proof that [the plaintiff's] performance was comparable to his co-workers is not proof that [the plaintiff's] performance met [his employer's] legitimate job performance expectations").  Accordingly, Samuelson's evaluation of Plaintiff's work does not create a genuine issue of material fact for purposes of summary judgment.

### B. Plaintiff's Repeated Tardiness And Inability To Work After Hours.

#### 1. Plaintiff Was Prevented From Working Late Because Of His Numerous Diabetic Seizures That Occurred At The End Of The Day And The County's Concern That No One Would Be Present To Assist Plaintiff.

Plaintiff admits in his brief that he was tardy to work on numerous occasions.  (Pl. Br. at 15).  Nevertheless, he argues that his attempts to compensate for his tardiness were stymied when the County refused to permit Plaintiff to work late.  (Id.)  He also complains that he was marked as tardy if he was "just two or three minutes late."  (Id.)

As the County explained in its Brief in Support of Summary Judgment, Plaintiff was restricted in his ability to work late because of the numerous low-blood sugar episodes that he experienced at the end of the workday.  (Def. Br.[4] at 19).  Defendants' specific concern was that Plaintiff would be alone when such an episode occurred.  (Id.)  Because of Plaintiff's near incapacitation when such episodes occurred, Defendants feared that Plaintiff would not be able to care for himself in the event he experienced an episode after hours.  (Id.)

---

[4] "Def. Br." refers to pages from Defendants' Memorandum of Law In Support of Summary Judgment, the original of which was filed with the Court on November 7, 2003.

As for Plaintiff being "marked" late for tardiness, it is undisputed in this matter that Plaintiff was tardy to work at least 20 times over the course of 19 months. (Pl. Br. at Ex. G, p. 146). Defendant Brian Kahler explained that arriving even a few minutes late disrupts the "pyramid" work structure of the office because of the manner in which work flows through the office. (Id. at Ex. G, p.41). Moreover, it is an employer's prerogative to require that its employees arrive at work in a timely fashion.[5] See Simpson v. Kay Jewelers, 142 F.3d 639, 647 (3d Cir. 1998) (writing that an employer is entitled to establish standards or criteria for making employment decision).

Curiously, Plaintiff turns on his own argument and complains that he was never disciplined for his repeated tardiness to work. (Pl. Br. at 16). Specifically, Plaintiff first complains that he was "marked" late for work, which resulted in his "unsatisfactory" rating on his overall evaluation, but then complains that he should have been subject to the County's progressive discipline measures if his tardiness was of such significance to the office. (Id. at 15, 16). In other words, from Plaintiff's perspective, Defendants were discriminating against him when they reprimanded him and when they failed to discipline him.

Interestingly, Plaintiff fails to point out that Kahler, whom Plaintiff accuses of discrimination, is the individual who chose not to discipline Plaintiff for his habit of tardiness. Indeed, to the extent that Kahler was looking for an excuse to terminate Plaintiff, which Plaintiff

---

[5] George Samuelson, upon whose testimony Plaintiff relies for assessing the quality of Plaintiff's work product, specifically testified that the Fiscal Department did not permit employees to work late in order to compensate for tardiness. (N.T. Samuelson at 51).

argues was the case, Kahler could have done so earlier in Plaintiff's four (4) year tenure by disciplining him for tardiness.[6]

Plaintiff also complains that his tardiness could not have been problematic because he received an accolade for his attendance at work. (Pl. Br. at 17). Plaintiff draws the bizarre conclusion that attendance and tardiness are synonymous. (Id.) To the contrary, there has been no evidence produced in this case that tardiness impacts upon calculation of an employee's attendance for purposes of the "Attendance Award" that Plaintiff received. Notably, Plaintiff fails to complain that the multiple instances of his having to leave work early when he suffered a low blood sugar episode should have impacted whether he received an "Attendance Award." (See id.) If anything, the Attendance Award is further proof that Plaintiff's supervisors were not engaged in a concerted effort to discriminate against or "punish" Plaintiff because of his disability.

Further supporting Defendants' argument that there was no intent to discriminate is Plaintiff's admission that his supervisors, including Kahler, noted that Plaintiff had improved in certain limited areas of his work prior to his termination. (Pl. Br. at 20). If, as Plaintiff argues, Defendants wanted nothing more than to terminate Plaintiff, it is illogical that they would bother to note any improvement in Plaintiff's work product.

---

[6] Plaintiff also argues that Defendant Lazorik was attempting "to force [Plaintiff] out of the workplace" when he sent a letter to Plaintiff's physician in 1997 seeking information as to whether Plaintiff could perform the essential functions of his job. (Pl. Br. at 28). This letter was sent more than four (4) years prior to Plaintiff's termination. If Lazorik had "an effort" afoot to "force [Plaintiff] out of the workplace," it was an exceedingly slow effort. Moreover, this argument contradicts Plaintiff's admission that Lazorik's letter was "warranted" in light of Plaintiff's health problems. (N.T. Pl. at 188).

-7-

### 2. Employees Other Than Plaintiff Did Not Require Surveillance Because No Other Employee Experienced Regular, Health-Related Episodes That Required The Intervention Of Paramedics On A Regular Basis.

Plaintiff "supports" his argument that he was subject to discrimination based upon Lazorik's testimony that other employees in the department were not required to present letters to their physicians seeking (1) information about their health conditions; and (2) other employees were not subject to "surveillance" as was Plaintiff. (Pl. Br. at 29).

However, Plaintiff has produced no evidence that any other employee in the department suffered regular, health-related episodes that required the assistance of paramedics and, occasionally, trips to the hospital for treatment. Furthermore, Plaintiff admits that the letter from Lazorik to Plaintiff's physician was warranted. (N.T. Pl. at 188, Def. Br. at 19).

## II.     CONCLUSION[7]

For all of the foregoing reasons, Defendants County of Lehigh, Thomas Lazorik, Brian Kahler, Ted Kehm, Janice Nisbet, Jane Baker and Richard O. Klotz request that the Court grant their Motion for Summary Judgment and enter judgment in their favor and against Plaintiff, Timothy Franks.


Date: February 4, 2004
_____
David J. MacMain (Atty. ID No. 59320)
L. Kristen Blanchard (Atty. ID No. 80005)
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109
215-772-1500

Attorneys for Defendants
County of Lehigh, Thomas Lazorik, Brian Kahler,
Ted Kehm, Janice Nesbit, Jane Baker
and Richard O. Klotz

---

[7] Plaintiff also argues that the Third Circuit has opined that where an employer has "broad discretion to apply whatever standards it chooses, the employer's explanations for terminating the plaintiff are likely to mask the real reason for the adverse employment action, namely discrimination."  (Pl. Br. at 8).

The Third Circuit has made no such sweeping declaration.  To the contrary, the Iadinarco Court, which Plaintiff cites in support of his argument, wrote that an employer cannot defend a hiring decision based "merely" upon the argument that another individual was "the right person for the job."  Iadinarco v. Runyon, 190 F. 3d 151, 166-67 (3d Cir. 1999).

1002920v1

-9-

## CERTIFICATE OF SERVICE

I, L. Kristen Blanchard, attorney for Defendants, hereby certify that on this 4th day of February, 2004, I caused a true and correct copy of the foregoing **Defendants' Reply to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment** to be served via First Class, United States mail, postage prepaid, on counsel for the Plaintiff at the following address:

Sidney L. Gold, Esquire
Law Offices of Sidney Gold
Suite 515, Eleven Penn Center
1835 Market Street
Philadelphia, PA  19103

*Attorney for Plaintiff,*
*Timothy Franks*

_____
L. Kristen Blanchard

1002920v1